UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE | ) |
| | ) |
| MARK CHACHULA | ) Bankruptcy No. 10 B 26534 |
| Debtor. | ) |
| | ) |
| INLAND BANK & TRUST f/k/a WESTBANK | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 11 A 00073 |
| | ) |
| MARK CHACHULA | ) |
| Defendant. | ) |

## MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS COUNT II

Defendant, the debtor in the underlying bankruptcy case, owned and operated a used car dealership. His business was financed through a floor-plan financing agreement with Inland Bank & Trust ("Inland"). Inland Bank and Trust has filed an Adversary Complaint, alleging that a debt owed to it by Defendant is not dischargeable. The Complaint contains three Counts, and Debtor has moved to dismiss Count II, which pursuant to 11 U.S.C. § 523(a)(4) alleges that the debt is for fraud while acting in a fiduciary capacity or embezzlement. Debtor has moved to dismiss that Count on the basis that no fiduciary relationship existed under Seventh Circuit precedent. For reasons stated below the Motion is denied.

## ALLEGATIONS OF THE COMPLAINT

Debtor was the sole owner and operator of Hot Cars, Inc., a used-car dealership. Beginning in 1999, Debtor and Hot Cars entered into a series of loan transactions with Inland as co-borrowers, whereby Inland loaned funds in order to finance the dealership, commonly called floor-plan

financing. On June 30, 2004, Debtor and Hot Cars executed the loan agreements now at issue. The security agreement of that date provided, among other things:

> Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds . . . . Upon receipt, Grantor shall immediately deliver any such proceeds to Lender."

(Complaint ex. C, at 3.) That agreement also provided:

> The relationship between Borrower and Grantor [that is, Debtor and his company] and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and [remaining pages missing] . . . ."

(*Id.* at 7.) However, contrary to these obligations, Debtor did not forward to Inland the proceeds from the sales of inventory vehicles Inland had financed. Debtor also failed to send Inland proceeds from sales of vehicles that Inland had repossessed and stored at Debtor's property.

Inland now argues that the proceeds of vehicles sales were the corpus of an express trust, and that by failing to remit those proceeds to Inland, Debtor either committed fraud while acting in a fiduciary capacity or he embezzled the funds. The key issue is whether Debtor held the vehicle sale proceeds in trust for Inland, such that there was a fiduciary relationship or that Debtor might have embezzled them.

## DISCUSSION

A discharge in bankruptcy does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4).

1.   **Fraud in a Fiduciary Capacity**

The discharge exception for fraud in a fiduciary capacity is a narrow one reaching only a subset of state-law fiduciaries. *In re Berman*, 629 F.3d 761, 768–70 (7th Cir. 2011). A fiduciary relationship arising from an express trust falls within the scope of the exception, as do relationships involving "special confidences" for which the law implies fiduciary obligations, such as the attorney-client or director-shareholder relationships. *Id.* at 770–71. "[A] ordinary principal-agent or buyer-seller relationship, without more, is not a fiduciary relationship under section 523(a)(4)." *Id.* at 771.

Here, there is no special relationship that in and of itself would support liability under § 523(a)(4). No "special confidences" were involved as in an attorney-client relationship. As the agreement expressly stated, Debtor and Inland were borrower and lender and were not generally fiduciaries of one another under the loan agreement. Therefore, Inland has stated a claim only if it has shown an express trust.

Hallmarks of an express trust include segregation of funds, management by financial intermediaries, and recognition that the entity controlling the funds has only bare legal title. *Berman*, 629 F.3d at 769.

> These hallmarks, as well as a demonstration of clear intent to create a trust, can distinguish a trust relationship from an ordinary contractual relationship. Implied trusts lacking these hallmarks, such as constructive or resulting trusts imposed on transactions as a matter of equity, do not fall within the statutory exception. Unlike express trust arrangements, fiduciary duties arising under constructive or resulting trusts are found to be implied by courts only as a result of existing debts. For a section 523(a)(4) exception to apply, the fiduciary duties must exist *prior* to the debt.

*Id.* (emphasis in original) (internal citations omitted).

The security agreement between Inland and Debtor does not simply label arrangement a "trust." It expressly imposes on Debtor the obligation to hold vehicle-sale proceeds on Inland's behalf and

not to commingle those proceeds with any other funds. These express terms in their agreement demonstrate a clear intent to create a trust, with all the attendant duties and obligations. While their general relationship was one of debtor and creditor, as discussed above, the parties created a special relationship when it came to the handling of vehicle-sale proceeds. Therefore, an express trust existed that might support liability under § 523(a)(4) for fraud while acting in a fiduciary capacity.

Debtor improperly relies on *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331, 334 (1934) for the proposition that floor-plan financing arrangements do not give rise to fiduciary relationships. In that case, the debtor was a car dealer and the creditor financed the debtor's purchase of cars for resale. *Id.* at 330. One of the documents the parties executed was a "trust receipt," which indicated that the debtor would hold a purchased car as the property of the [creditor] for the purpose of storage, and not to sell, pledge, or otherwise dispose of it except upon consent in writing." *Id.* The Court ruled that, considering all of the documents, the creditor's only interest in the vehicles was as security for the debt and that the mere statement that the debtor held the car as the creditor's property did not create a trust. *Id.* at 334.

The specific holding in *Davis* - that the particular language in the documents executed between the two litigants did not create a trust - does not automatically apply here. The specific language and facts of this case must be analyzed. Unlike the agreement at issue in *Davis*, the agreement here does not simply characterize the relationship between Inland and Debtor. It imposes a real obligation on Debtor to segregate the vehicle-sale proceeds, a provision entirely absent in *Davis*. Therefore, *Davis* does not mandate a finding that no express trust existed here as a matter of law.

2. **Embezzlement**

Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989). A security interest does not rise to the level of ownership sufficient to support a claim for embezzlement. *In re Fairgrieves*, 426 B.R. 748, 756 (Bankr. N.D. Ill. 2010).

Here, Inland alleges that Debtor misappropriated vehicle-sales proceeds and certain vehicles that Inland had repossessed and stored at Debtor's property. The proceeds were held in trust for Inland (as discussed above), and Inland, not Debtor, had ownership interests in the repossessed vehicles. Therefore, Inland's interest in both properties is an ownership interest, not a mere security interest. Therefore, Inland has stated a claim for embezzlement of entrusted property under § 523(a)(4).

## CONCLUSION

For reasons stated the Defendant's Motion to Dismiss Count II will be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ____ day of June, 2011.